UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIK SHEEHAN, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| VERIZON COMMUNICATIONS, INC., LAURA | ) |
| CARDINALE, LISA DAMSK, CAROLYN | ) |
| DRISCOLL, PAUL McGOVERN, LINDA | ) |
| RICHELSON, DOREEN TOBEN and DOUG | ) |
| WILDER, | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS

### I.    Introduction and Procedural History

The Defendants hereby move to Dismiss the Plaintiff's Complaint in its entirety as to each of the Individual Defendants, Laura Cardinale ("Cardinale"), Lisa Damask ("Damask"), Carolyn Driscoll ("Driscoll"), Paul McGovern ("McGovern"), Linda Richelson ("Richelson"), Doreen Toben ("Toben") and Doug Wilder ("Wilder") (collectively, the "Individual Defendants") on grounds that the Plaintiff's failure to name the Individual Defendants as Respondents in the administrative proceeding at the Massachusetts Commission Against Discrimination ("MCAD") is an absolute bar to suit against these Defendants. Verizon Communications, Inc. ("Verizon") also moves to Dismiss Counts I (Negligent Supervision), III (Sexual Harassment) and V(Aiding and Abetting Another to Violate Mass. Gen. Laws. ch. 151B) against Verizon because, for the reasons set forth below, the Plaintiff has failed to state a claim upon which relief may be granted.

In the instant case, the Plaintiff, Erik Sheehan ("Sheehan" or "Plaintiff"), brought suit against the Defendants arising out of his allegation that he was discriminated against based upon his sex. When Sheehan brought his complaints to management, Verizon conducted an extensive internal investigation of Sheehan's claim, including interviewing many witnesses and reviewing Sheehan's performance evaluations at his request. Complaint, ¶¶ 36, 39-40. Verizon could not substantiate any claims of sexual discrimination, sexual harassment or retaliation, including the allegation that Richelson singled Sheehan out because he was a man. However, because Verizon determined that Richelson violated the Code of Conduct in dealing with both male and female co-workers, Richelson was reprimanded by way of a Written Warning. See Charge of Discrimination filed with the MCAD ("MCAD Charge"), attached hereto as Exhibit A.[1]  Despite the outcome of the Verizon investigation, the reprimand of Richelson, and the fact that Sheehan remains employed by Verizon to this date -- and was voluntarily transferred by Verizon to the position of his choice within Verizon on two occasions -- he nonetheless filed a MCAD Charge against Verizon on November 6, 2002.[2]

After investigating Sheehan's MCAD Charge, the investigator concluded that the information obtained failed to establish a violation of the statutes about which Sheehan complained. Complaint, ¶ 47. The MCAD investigator recommended a finding of lack of probable cause and the MCAD agreed, entering a lack of probable cause finding on February 2, 2004. Complaint, ¶ 47. Sheehan appealed that finding, and, after further evidence was presented

---

[1] Plaintiff's MCAD Charge is attached hereto as Exhibit A. It is specifically referred to in his Complaint (¶ 46) and therefore the document and the allegations contained therein are considered part of the Complaint. *Pauleman v. Tobin*, 30 F.3d 307, 308 (2nd Cir. 1994); *see also Riebold v. Eastern Casualty Ins. Co.*, 1997 WL 311523 (Mass. Super. 1997) (holding that where plaintiff specifically refers to MCAD charge in her complaint, court may consider it on defendant's Rule 12(b)(6) motion).

[2] Plaintiff's Complaint alleges (¶ 46) that the MCAD Charge was filed on or about October 23, 2002. However, the MCAD Charge, attached as Exhibit A, makes clear that it was filed on November 6, 2002.

BOS_BOS_463328_1.DOC/TVANDYCK

by Sheehan and considered by the MCAD, the lack of probable cause finding was reversed on July 19, 2004. Complaint, ¶ 48. After a Conciliation Hearing at the MCAD on September 1, 2004 failed to resolve the matter, the Plaintiff voluntarily dismissed his MCAD Charge and brought suit in the Superior Court on or about September 8, 2004. For the first time Cardinale, Damask, Driscoll, McGovern, Richelson, Toben, and Wilder were individually named as Defendants along with Verizon. See Exhibit A.

Plaintiff served the Defendants' counsel with the Complaint on October 7, 2004, which service was accepted. On November 8, 2004, the Defendants timely removed the case to the United States District Court for the District of Massachusetts, based upon diversity jurisdiction and fraudulent joinder of the Individual Defendants.

## II. Facts[3]

Sheehan's Complaint, filed in the Superior Court of Massachusetts (Suffolk County) on September 8, 2004, names Verizon, and the Individual Defendants as Defendants. Sheehan's Complaint sets forth five Counts: Count I (Negligent Supervision against Verizon, Cardinale and Toben); Count II (Sexual Discrimination against Verizon and Richelson); Count III (Sexual Harassment against Verizon and Richelson); Count IV (Retaliation against all Defendants); and Count V (Aiding and Abetting another in violation of Mass. Gen. Laws ch. 151B against all Defendants).

Sheehan fails to allege and did not in fact name any of the Individual Defendants in his MCAD Charge within 300 days of the alleged discrimination as required by Mass. Gen. Laws ch.

---

[3] For the purposes of the Motion to Dismiss, all of the Plaintiff's allegations must be assumed to be true. Therefore, while many of the Plaintiff's allegations are disputed, solely for the purposes of this Motion, the Defendants concede them.

BOS_BOS_463328_1.DOC/TVANDYCK

151B, § 5 or serve them with a copy of the MCAD Charge. <u>See</u> Exhibit A and the Complaint.[4]
While Richelson was identified by name in the body of the MCAD Charge, she was not named
individually as a Respondent and the Plaintiff has not alleged that she was given notice of the
MCAD Charge. <u>See</u> Exhibit A and the Complaint.[5]

Sheehan alleges that he began working under Richelson's supervision in Verizon's
Compensation Administration department on April 2, 2001.[6] Complaint, ¶ 13-14. According to
Sheehan, Richelson treated him "differently from other employees because of his gender."
Complaint, ¶ 22. Generally, Sheehan alleges that:

- Richelson "created a hostile and abusive work environment for Sheehan both in public and in private" (Complaint, ¶ 23);

- Richelson "targeted Sheehan for this harassment because of his gender (male)"(Complaint, ¶ 24);

- he "suffered adverse employment actions resulting from Richelson's animus towards" him "based on his gender"(Complaint, ¶ 25);

- when he reported the harassment and discrimination, he was retaliated against by all of the Defendants and the harassment intensified (Complaint, ¶ 26-27).

Specifically, Sheehan alleges that Richelson:

- "continuously belittled him" in the presence of his colleagues (Complaint, ¶ 28);

- sent him an e-mail on May 29, 2001, which stated, "I do think there is a difference between a working man and a working mother, but that is because I am one and it is my personal bias." (Complaint, ¶ 29);

---

[4] *See also* Affidavit of Paul McGovern, previously filed with the Defendants' Notice of Removal (Docket Document No. 2).
[5] *See also* Affidavit of Linda Richelson ("Richelson Affidavit"), previously filed with the Defendants' Notice of Removal (Docket Document No. 3). As set forth in the Affidavit, Richelson did not have an opportunity to review the MCAD Charge while it was pending with the MCAD, and she did not participate in any manner in the administrative proceeding at the MCAD.

[6] The MCAD Charge states that on April 1, 2001, he was "promoted to 2M manager, under the supervision of Linda Richelson."

- stated that Sheehan reminded her of her ex-husband because she did all of the work or researching tables and her husband wanted to pick it out, then told Sheehan"[a]nd for you, I'm the boss, I'll make all the decisions not you and I'm going to show you," after "expressing her hostility and hatred towards her ex-husband on numerous occasions (Complaint, ¶ 30);

- threatened to demote Sheehan as soon as she could find a qualified female to take his job (Complaint, ¶ 31);

- insinuated that Sheehan "suffered from alcoholism" during a meeting through a hand gesture (Complaint, ¶ 32);

- compared Sheehan to her ex-husband in that he procrastinated and failed to finish projects he put off on a timely basis, then saying, "Maybe you're not like him, but your remind me of him. I'm not happy." (Complaint, ¶ 33);

- sent Cardinale and female staff members an e-mail on October 30, 2001, "detailing her anger quotient towards men" (Complaint, ¶ 35); and

- falsified documents used to fabricate a negative employee evaluation for Sheehan, which resulted in adverse employment action (Complaint, ¶ 42).

Because Sheehan specifically referred to a number of e-mails in his Complaint, those e-mails have been incorporated by reference into the Complaint, and may be considered by the Court in the Defendants' Motion to Dismiss.[7] The e-mails, dated May 29, 2001, August 29, 2001 and October 30, 2001, are attached hereto as Exhibits B through D.

The first e-mail was sent by Richelson to Sheehan on May 29, 2001 in response to a series of e-mails exchanged between Sheehan and Richelson and has been taken wholly out of context by Sheehan. See Exhibit B. This particular exchange started when Richelson reprimanded Sheehan for failing to have the proper equipment (phones and computers) ready for new team members he hired, one of which was a working mother. When Sheehan downplayed the issue, Richelson responded that Sheehan should have

---

[7] See Edwin v. Blenwood Associates, Inc., 9 F. Supp.2d 70, 72 (D.Mass. 1998), quoting Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

BOS_BOS_463328_1.DOC/TVANDYCK

resolved the issues as soon as Sheehan started to hire new people and that the team could

not be productive without the necessary tools. She then added: "Also, I am a working

mother, no working mother should be without a phone." In response Sheehan argued

with Richelson about the lack of phones and computers and said: "I don't' think their

[sic] should be a difference if your [sic] a working mother or a working man without

children, everyone has a family life that is import to them." In response, Richelson said:

> I don't disagree with anything you say, however, I raised the issue early
> and brought it to your attention and Corinne's attention. To find out it was
> not done was disappointing, but not the end of the world. I do think there
> is a difference between a working man and a working mother, but that is
> because I am one and it is my personal bias.

Sheehan's allegation in paragraph 29 of the Complaint, simply excerpts the last sentence of this

e-mail chain, taking the comment wholly out context of the discussion over phone equipment.

The next allegation concerning e-mail communication is set forth in paragraph 34 of

Sheehan's Complaint. There he alleges that English sent Cardinale an e-mail "expressing

English's concern about Richelson's treatment of Sheehan and its effects on Sheehan." While

English's e-mail did address Richelson's treatment of Sheehan, it also addressed in detail

complaints about Richelson's treatment of all of her "direct reports," including English, all of

whom, Sheehan admits (Complaint, ¶ 21), were women. See Exhibit C.

Finally, Richelson's e-mail dated October 30, 2001 and referred to in paragraph 35 of

Sheehan's Complaint is completely misquoted. See Exhibit C. Sheehan complains that

Richelson sent an e-mail to Cardinale and other female staff members "detailing her anger

quotient *towards men*." (emphasis added). Aside from the obvious fact that Sheehan fails to

allege that Richelson sent the e-mail to him (and it is unclear how he learned of it or could have

been harassed by it as a result), Sheehan's allegation is completely untrue. The e-mail was in

response to a farcical comment downloaded from the internet about how to win the war in Afghanistan using women and their "anger quotient" to overthrow the Taliban. The e-mail was forwarded several times and Richelson commented on it, saying that it was "[q]uite an insight, I can picture myself there [in Afghanistan] with my current anger quotient!" Nothing is said "detailing her anger quotient *towards men*," as suggested in Sheehan's Complaint.

Based on these allegations, including those based upon the e-mails attached as Exhibits B through D, Sheehan reported Richelson's behavior to Verizon several months later on or about December 9, 2001, "express[ing] his concerns" about Richelson to Wilder. Complaint, ¶¶ 18, 36. As a result, McGovern, Verizon's EEOC Management Consultant, investigated Sheehan's complaint. Complaint, ¶¶ 17, 36. Sheehan also alleges that he was assaulted and battered by Sheehan while the two were at work on or about December 14, 2001[8] and Sheehan notified Wilder about the assault, requesting that action be taken. Complaint, ¶¶ 37-38.

Sheehan further alleges that he received a negative evaluation from Richelson, which was based on her animus towards Sheehan as a male, and not his actual performance. Complaint, ¶ 43. He also alleged that he was demoted twice and transferred to a different department, resulting in lower compensation and fewer promotion and other opportunities, because of his decision to pursue his claim and due to Richelson's discriminatory animus toward him. Complaint, ¶ 43-45.

---

[8] The MCAD Charge alleges that this "assault" took place a week later, on December 21, 2001.

BOS_BOS_463328_1.DOC/TVANDYCK

### III. Argument

**A.    All Counts Pertaining To The Individual Defendants Should be Dismissed Because None of them Were Named Respondents in Sheehan's MCAD Charge.**

Under Chapter 151B, which makes it unlawful for employers to sexually harass employees, any aggrieved employee must file an administrative charge with the MCAD before initiating a civil suit.  Mass. Gen. Laws §§ 4(1), 4(16A), and 9.  The requirement that an employee exhaust his administrative remedies at the MCAD applies to all claims of workplace discrimination, whether or not Chapter 151B is specifically evoked.  *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 585 (1994).  Thus, an employee may not evade Chapter 151B's procedural requirements by recasting his discrimination claim as a violation of the Equal Rights Act, the Civil Rights Act, or any other statutory or common law right, including Chapter 214.  *Green v. Wyman-Gordon Co.* 422 Mass. 551, 555-557 (1996); *Clarke v. Kentucky Fried Chicken of Cal., Inc.*, 57 F.3d 21, 26 (1st Cir. 1995).

In this case, Plaintiff's Complaint must be dismissed against all of the Individual Defendants (Cardinale, Damask, Driscoll, McGovern, Richelson, and Wilder) because Sheehan never filed an administrative charge with the MCAD naming them as Respondents.  All of Sheehan's claims of discrimination, set forth in the Complaint are subject to the exhaustion requirements of Chapter 151B.  *Green*, 422 Mass. at 555-557 (specifically rejecting argument that Chapter 214 invests Superior Courts with jurisdiction to consider non-exhausted claims of workplace sexual harassment).  Furthermore, MCAD regulations require an aggrieved employee to identify all persons alleged to have committed the unlawful discriminatory acts.  804 C.M.R. § 1.03(4).  "The dual purpose of the filing requirement is to provide the MCAD with an

BOS_BOS_463328_1.DOC/TVANDYCK

opportunity to investigate and conciliate a discrimination claim and to provide notice to an accused of a potential lawsuit." *Wong v. City of Cambridge*, No. 2001-2737-C, 2003 WL 1542117, * 4 (Mass. Super. Feb. 21, 2003). These purposes would be defeated if Sheehan could sue the Individual Defendants because the Individual Defendants had no opportunity to respond at the MCAD and had no notice that they potentially could be sued. Likewise, the MCAD had no opportunity to investigate or reconcile the dispute between Sheehan and the Individual Defendants.[9]

As such, the Plaintiff's Complaint must be dismissed in its entirety against the Individual Defendants, because the Plaintiff has not complied with the jurisdictional prerequisite of asserting a MCAD Charge against them. This deficiency cannot be cured. Moreover, at this point, it would be futile for Sheehan to bring a new MCAD Charge against the Individual Defendants because more than 300 days has elapsed since the last allegedly discriminatory act occurred i.e., actions taken before he filed his MCAD charge on November 6, 2002. *See* Chapter 151B, § 5.

Therefore, the Plaintiff's Complaint against Defendants, Cardinale, Damask, Driscoll, McGovern, Richelson, and Wilder, must be dismissed in its entirety.[10]

---

[9]    Mentioning Richelson in the fact description of Sheehan's MCAD Charge is qualitatively different than naming her as a Respondent, which might have prompted her to hire an attorney and file a Position Statement with the MCAD. Sheehan concedes that he filed only one Charge at the MCAD (Complaint, ¶ 46), which Charge failed to name Richelson as a Respondent. *See* Exhibit A. This lawsuit is the first instance in which Sheehan has asserted a claim against Richelson individually. *Cf. Diluca v. Communications & Power Indus, Inc.,* No. 00-02000, 2003 WL 21781564, *5 (Mass. Super. Ct. July 25, 2003) (barring claim of national origin discrimination where plaintiff's MCAD Charge did not have the national origin box checked). See Richelson Affidavit.

[10] As set forth more fully in the Defendants' Notice of Removal, the joinder of the individuals was fraudulent and cannot defeat this Court's jurisdiction since there exists complete diversity between Sheehan and Verizon.

BOS_BOS_463328_1.DOC/TVANDYCK

**B.    Plaintiff Cannot State A Claim Upon Which Relief May Be Granted.**

**1.    The Standard of Review this Court Should Apply.**

While Fed. R. Civ. P. 8(a) simply requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, *Boston & Maine Corp. v. Town of Hampton,* 987 F.2d 855, 864-65 (1st Cir. 1993), the pleading must be sufficient to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson,* 355 U.S. 41, 47 (1957); *United States v. 7.92 Acres of Land,* 769 F.2d 4, 11 (1st Cir. 1985). The court must accept well-pleaded allegations as true, and all ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Estate of Soler v. Rodriguez,* 63 F.3d 45, 53 (1st Cir. 1995). In deciding whether to dismiss, the court should view the complaint in the light most favorable to the plaintiff, *Conley,* 355 U.S. at 47, and can only dismiss it if appears beyond doubt that, under no set of facts, can a plaintiff state a claim which would entitle it to relief. *Tamburello v. Comm-Tract Corp.,* 67 F.3d 973, 975 (1st Cir. 1995).

Application of this standard to Plaintiff's Complaint establishes that this court should allow Defendants' motion to dismiss Counts I (Negligent Supervision), III (Sexual Harassment and V (Aiding and Abetting a Violation of Mass. Gen. Laws ch. 151B).

**C.    This Court Should Dismiss Count I of Plaintiff's Complaint , Negligent Supervision.**

**1.    Plaintiff's Common Law Claim for Negligent Supervision Is Barred Because Mass. Gen. Laws ch. 151B Provides the Exclusive Remedy for Employment Discrimination.**

Mass. Gen. Laws ch. 151B, § 9 provides that "[a]s to acts declared unlawful by section four, the procedure provided in this chapter shall, while pending, be exclusive." The Supreme Judicial Court has found this language "to embody a legislative intent 'to subject all

BOS_BOS_463328_1.DOC/TVANDYCK

discrimination claims to some administrative scrutiny.'" *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 555, 664 N.E.2d 808, 811 (1996) (quoting *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 585, 631 N.E.2d 555 (1994)).  Accordingly, the court has "declined to create new common law remedies for employment discrimination."  Id.  The court has also barred "common law claims [that] are merely recast versions of . . . sexual harassment claims under c. 151B."  Id. at 558, 664 N.E.2d 813.

Indeed, cases construing discrimination claims and common law claims for negligent supervision have uniformly held that the common law claims are preempted by the exclusivity of ch. 151B.  In *Choroszy v. Wentworth Institute of Technology*, 915 F.Supp. 446 (D. Mass. 1996), a former security guard attempted to assert discrimination claims and a common law claim for negligent supervision.  The court (O'Toole, J.), in granting defendant's Rule 12(b)(6) motion, held as follows:

> [Plaintiff's] claim falters on several other grounds.  First, the Massachusetts Supreme Judicial Court has held "that, where applicable, G.L. c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections, and that the ... failure to adhere to the requirements of G.L. c. 151B require[s] the dismissal of [the] complaint. [citations omitted.]  The fact that plaintiff describes what he suffered as damages flowing from negligent supervision rather than from employment discrimination does not change the essence of his claim, which he originally characterized as a discrimination claim." [citations omitted.]

Id. At 451.  *See also Morehouse v. Berkshire Gas Co.*, 989 F.Supp. 54, 66-67 (D. Mass. 1997) (Ponsor, J.) (claim that employer did not adequately supervise employees allegedly committing sexual harassment of fellow employee was preempted by Mass. Gen. Laws ch. 151B).

Plaintiff here attempts to do precisely what the law, and Courts interpreting it, have not permitted: assert a common law claim for negligent supervision that is premised on the same conduct that forms the basis of his discrimination claim. Both the Plaintiff's ch. 151B claim and

BOS_BOS_463328_1.DOC/TVANDYCK

his negligent supervision claim, rely, in part, on the allegation that Richelson discriminated against him and then falsified documents to create a false, negative evaluation of Sheehan, which were used in personnel decisions. Such claims are preempted by ch. 151B, Sheehan's exclusive remedy.

Because Count I of Plaintiff's Complaint is preempted by Mass. Gen. Laws ch. 151B, this Court should dismiss this Count as to all Defendants.

## 2. Count I Must Be Dismissed As It Is Barred By The Massachusetts Workers' Compensation Act.

Count I is also barred by the Workers' Compensation Act. The Worker's Compensation Act, Mass. Gen. Laws ch. 152, provides the exclusive remedy by which an employee can recover damages for personal injuries sustained in the course of and arising out of, his or her employment. *See Dorn v. Astra USA*, 975 F.Supp. 388,395 (D. Mass. 1997). Mass. Gen. Laws ch. 152, § 24 allows employees to recover for personal injuries which are shown to have arisen out of, and in the course of, employment. Personal injuries are defined as "mental or emotional disabilities where a significant contributing cause of such disability is an event or series of events occurring within the employment period." Mass. Gen. Laws ch. 152, § 1(7A) Id.

Application of the foregoing establishes that Plaintiff's claim for negligent supervision is barred by the Worker's Compensation Act. Indeed, in a case on point, the First Circuit affirmed the district court's judgment dismissal of the Plaintiff's common law claim of negligent supervision on grounds that such common law claims were preempted by the Massachusetts Worker's Compensation Act. *Clarke v. Kentucky Fried Chicken of California, Inc.*, 57 F. 3rd 21, 27 (1st Cir. 1995). In so holding, the First Circuit relied heavily on *Catalano v. First Essex Sav. Bank*, 37 Mass. App. Ct. 377, *review denied*, 419 Mass. 1101 (1994), noting that:

it would strain credulity and common sense to presume that Legislature chose to limit employers' collective liability under the workers' compensation scheme, only to expose individual employers to greater liability in common law negligence suits based on bona fide personnel actions.

To the extent that the Plaintiff is claiming personal injuries, including "severe emotional distress which caused anxiety attacks, nose bleeds, hair loss, and severe weight gain" (Complaint, Count I, ¶ 57), the Worker's Compensation Act provides the exclusive remedy for Plaintiff's common law claim for negligent hiring, retention and supervision.

Therefore, Count I should be dismissed on these grounds as well.

### 3. Count I Must Fail Because An Employer's Duty to Supervise Its Employees Runs Only To Public, Not To Employees.

Finally, relief under Count I for negligent supervision is not available to Plaintiff because an employer's duties under a common law negligent supervision theory run only to members of the public, not employees. *See Patriarca v. Ctr. For Living & Working, Inc.*, 1999 WL 791888, at * 4 (Mass. Super. 1999). In Massachusetts, employee recovery under a common law theory of negligent supervision is "troublesome." *Choroszy v. Wentworth Inst. of Tech.*, 915 F. Supp. 446, 450 (D. Mass. 1996). As recently noted, there are "no cases under Massachusetts law in this [twentieth] century in which any federal or state court applied this tort [of negligent supervision] to an employee's suit against his employer." *Choroszy*, 915 F. Supp. at 450.

For these reasons, the tort of negligent supervision is limited to situations where "employees are brought into contact with members of the public in the course of the employer's business." *Patriarca*, 1999 WL 791888, at * 4 (quoting *Vicarelli v. Bus. Int'l, Inc.*, 973 F. Supp. 241, 246 (D. Mass. 1997)). As a result, Courts have held that this tort imposes only a limited duty on the employer, a duty running only to members of the public, not its employees. Id. (citing *Vicarelli v. Bus. Int'l, Inc.*, 973 F. Supp. 241, 246 (D. Mass. 1997)); *see Choroszy*, 915 F.

Supp. at 450 (citing *Foster v. The Loft, Inc.*, 26 Mass. App. Ct. 289 (1988); 1 Stuart M Speiser,

*The American Law of Torts* § 4:11 (Lawyer's Co-operative 1985 & 1995 Supp.)).

In order to prevail on a claim of negligent supervision, the plaintiff must demonstrate

that: (1) defendant owed him a duty of care; (2) defendants' conduct breached that duty; (3)

defendants' conduct was the proximate cause of his harm; and (4) the plaintiff suffered actual

harm. *Grant v. John Hancock Mut., Life Ins. Co.*, 183 F. Supp. 2d 344, 368 (D. Mass. 2002)

(citing *Bennett v. Eagle Book Country Store, Inc.*, 408 Mass. 355, 358 (1990); *Moylan v. Stop &*

*Shop Cos., Inc.*, 2001 WL 262661, at *2 (Mass. Super. 2001)).    Because Sheehan cannot

establish that a duty is owed to him, he cannot state a claim for negligent supervision. *See*

*Vicarelli v. Bus. Int'l, Inc.*, 973 F. Supp. at 246 *Choroszy*, 915 F. Supp. at 450; *Foster*, 26 Mass.

App. Ct. 289; *Patriarca*, 1999 WL 791888, at * 4.

Count I, therefore, should, be dismissed since Plaintiff cannot make out a *prima facie*

case of negligent supervision, even if such a claim were cognizable in the face of the preemption

by Mass. Gen. Laws c. 151B.

**D.    Count III of the Complaint Should Be Dismissed Because the Conduct Alleged Does Not Constitute Sexual Harassment Within the Meaning of Chapter 151B.**

Chapter 151B defines sexual harassment as "sexual advances, requests for sexual favors,

and other verbal or physical conduct of a sexual nature when . . . (b) such advances, requests or

conduct have the purpose or effect of unreasonably interfering with an individual's work

performance by creating an intimidating, hostile, humiliating, or sexually offensive work

environment." Mass. Gen. Laws ch. 151B, § 1(18).  It is not sufficient for a claim under Chapter

151B that a plaintiff be offended or disturbed by conduct in the workplace.  Rather, "[t]he

discrimination prohibited by G.L. c. 151B, § 4(1), encompasses a work environment pervaded by

abuse and harassment." *College-Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 163, 508

N.E.2d 587, 591 (1987).

The legislature has explicitly defined "sexual harassment" as it applies to G.L. 151B, §

4(1) as follows:

> The term "sexual harassment" shall mean sexual advances, requests for sexual
> favors, and other verbal or physical conduct of a <u>sexual nature</u> when (a)
> submission to or rejection of such advances, requests or conduct is made either
> explicitly or implicitly a term or condition of employment or as a basis for
> employment decisions; (b) such advances requests or conduct have the purpose or
> effect of unreasonably interfering with an individual's work performance by
> creating an intimidating, hostile, humiliating or sexually offensive work
> environment.

<u>Id.</u> at 676-77 (quoting Mass. Gen. Laws. c. 151B, § 1(18) (2004)) (emphasis added).  This

language requires that, as a threshold to a claim of sexual harassment, alleged verbal or physical

conduct be of a "sexual nature."  <u>Id.</u>  A statement, "devoid of any sexual connotation or

harassment does not contravene chapter 151B." *Mullenix v. Forsyth Dental Infirmary for*

*Children*, 965 F. Supp. 120, 154 (D. Mass. 1996).  Plaintiff presents no evidence of "sexual

commands or lurid innuendos." *Prader*, 39 Mass. App. Ct. at 619; *see* Complaint, ¶¶ 13-49.

Furthermore, Richelson's alleged behavior, is "devoid of any sexual connotation," and therefore

does not rise to the level of sexual harassment within the meaning of G.L. c. 151B.

Moreover, to be actionable "sexual harassment under Mass. Gen. Laws c. 151B, [the

alleged] conduct must be sufficiently severe and pervasive, considering the totality of the

circumstances, to alter the terms an conditions of the plaintiff's employment." *Manno v. BJ's*

*Wholesale Club Inc.*, 150 F. Supp. 2d 325, 331 (D. Mass. 2001) (citing *College-Town, Div. of*

*Interco, Inc. v. Mass. Comm'n Against Discrimination*, 400 Mass. 156, 162 (1987)).  General

Laws chapter 151B, § 1(18), "is not a clean language act," and does not by any means serve to

"mandate clean language in the work place." *Prader v. Leading Edge Prods.*, 39 Mass. App. Ct. 616, 620 (1996) (internal quotations omitted).

Plaintiff presents no evidence of "sexual commands or lurid innuendos." *Prader*, 39 Mass. App. Ct. at 619; *see* Complaint, ¶¶ 13-49. In fact, the Plaintiff does not even make an allegation characterizing Richelson's behavior as sexual in nature. The best Sheehan can do is allege that "Richelson targeted the Plaintiff because of his gender and her animus towards males." Complaint, ¶¶ 22, 24 and 66. While such allegations may be sufficient to survive a Motion to Dismiss for gender discrimination, they are insufficient as a matter of law to state a claim for sexual harassment.

At best, Sheehan alleges that Richelson: 1) compared him to her ex-husband in an <u>asexual</u> context; 2) suggested that working mothers were different than working men; 3) joked that she could picture herself in Afghanistan given her anger quotient; 4) threatened to demote Sheehan and replace him with a qualified female; 5) insinuated through a hand gesture that Sheehan suffered from alcoholism; and 6) belittled him (in a non-specific way) in front of his colleagues. Complaint, ¶¶ 28-33. Even the comparisons to Richelson's ex-husband were non-sexual; those alleged exchanges involved discussions of misunderstanding of decision-making authority (Complaint, ¶ 30) and a tendency of Richelson's ex-husband to procrastinate, like Sheehan (Complaint, ¶ 33). Plaintiff does not allege that Richelson referred or alluded to a *sexual* relationship or act with her ex-husband or in any other context whatsoever made a sexual remark to or about Sheehan. Additionally, there is simply no allegation of any exchange between Sheehan and Richelson during which any reference was made to requests for sexual favors,

human sexuality, sexual innuendo or sexual acts in general. Richelson's purported behavior, "devoid of any sexual connotation," does not, therefore, contravene G.L. c. 151B.[11]

Furthermore, even assuming Plaintiff satisfied the threshold requirement of proving that Richelson's alleged acts were of a "sexual nature," the plain language of subsections (a) and (b) of G.L. 151B, § 1(18) render a claim of sexual harassment inapplicable to the facts of this case. Plaintiff has simply failed to allege any evidence that submission to sexual requests was a condition of his employment, therefore negating any claim under G.L. 151B, § 1(18)(a). *Ramsdell*, 415 Mass. at 677.

Count III should, therefore, be dismissed since Plaintiff cannot make out a prima facie case under G.L. c. 151B, § 4(1), as defined by G.L. c. 151B, § 1(18), and the allegations against Richelson fall well short of those sufficient to state a valid claim for sexual harassment.

---

[11] Indeed, numerous federal court decisions have held conduct far more egregious than anything that Plaintiff has alleged to fall well short of actionable sexual harassment. *See, e.g., Matthews v. City of Gulfport*, 72 F. Supp. 2d 1328 (M.D. Fla. 1999) (making "woo-woo" comment about plaintiff's legs; continually making comments amount women's breasts and other inappropriate comments; co-worker commenting about being a lesbian and licking his lips suggestively; co-worker making racial remark while thrusting pelvis suggestively); *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871 (5th Cir. 1999) (unwanted touching and stroking of plaintiff's arm; attempting to look down plaintiff's clothing; commenting on plaintiff's nipples and thighs; inviting plaintiff to sit on lap during meetings); *Black v. Zaring Homes, Inc.*, 104 F.3d 822 (6th Cir.) (telling plaintiff "I like sticky buns in the morning" while reaching over her for a bun and looking her up and down; suggesting that parcel of land be called "Titsville" or "Twin Peaks"; telling plaintiff she was paid great money for a woman; joking about plaintiff giving presentation where she mentioned name of Dr. Busam (pronounced "bosom"); asking plaintiff if she was dancing on tables at biker bar; and overhearing co-worker tell someone to "get the broad to sign it"), *cert. denied*, 522 U.S. 865 (1997); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745 (4th Cir. 1995) (male supervisor engaged in following conduct with male plaintiff: bumping into plaintiff; examining plaintiff's crotch with a magnifying glass; kissing plaintiff at his wedding; staring at plaintiff in bathroom; commenting on plaintiff's appearance; and making inappropriate sexual comments), *cert. denied*, 519 U.S. 818 (1996); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1995) (calling plaintiff "pretty girl"; making grunting sound when plaintiff wore leather skirt; commenting that office became hot after plaintiff entered it; telling plaintiff that announcement over public address system meant all pretty girls should run around naked; telling plaintiff he had to leave party early because there were too many pretty girls there and he didn't want to lose control; and telling plaintiff he was lonely and making masturbating gesture).

BOS_BOS_463328_1.DOC/TVANDYCK

**E.    Count V of the Complaint Must Be Dismissed, Because Verizon, the Only Defendant Against Whom the Plaintiff May Bring a Civil Action, Cannot Aid and Abet Itself in the Violation of Mass. Gen. Laws. ch. 151B.**

Because the Plaintiff failed to name the Individual Defendants in her MCAD Charge, the Complaint against them must be dismissed.  As such, the only Defendant against whom the Plaintiff may bring suit is Verizon.

A corporation cannot be held liable for aiding and abetting *itself*, although a corporation is a legal entity and can thus be held liable for aiding and abetting the acts of *another*.  In *Beaupre v. Cliff Smith & Assoc.*, the Massachusetts Appeals Court noted that Massachusetts law has long recognized corporations as viable legal persons, single and separate legal beings constituting separate legal entities.  50 Mass. App. Ct. 480, 494 (2000) (collecting cases).  In *Beaupre*, the defendant argued that he was legally incapable of aiding and abetting a corporation's sexually harassing behavior because, based on an alter ego theory, he and the corporation were one in the same.  *Id.*  The court soundly defeated this alter ego theory, but did not dispute the elementary principle that a single entity cannot aid or abet its own act.  *Id.*

Verizon, as a singular entity, without any other defendant properly brought before this Court's jurisdiction (see Section A, supra), cannot as a matter of law, aid and abet itself in its own act.  Therefore, the Court should dismiss Count V of the Complaint.

### V. CONCLUSION

For the foregoing reasons, Defendants Laura Cardinale, Lisa Damask, Carolyn Driscoll, Paul McGovern, Linda Richelson, Doreen Toben, and Doug Wilder, respectfully request that this Court grant Defendants' Motion to Dismiss the Plaintiff's Complaint in its entirety due to Plaintiffs' failure to name them as Respondents in his MCAD Charge.  Defendant Verizon

BOS_BOS_463328_1.DOC/TVANDYCK

Communications, Inc. requests that the Court dismiss Counts I, III and V against it and the

Individual Defendants named in those Counts as a result of the Plaintiff's failure to state a claim

as a matter of law.

> VERIZON COMMUNICATIONS, INC.,
> LAURA CARDINALE, LISA DAMASK,
> CAROLYN DRISCOLL, PAUL MCGOVERN,
> DOREEN TOBEN, LINDA RICHELSON AND
> DOUG WILDER,
>
> By their attorneys,


Dated: November 12, 2004                 _____/s/ Windy L. Rosebush_____
                                         Timothy P. Van Dyck, (BBO #548347)
                                         Windy L. Rosebush, (BBO #636962)
                                         EDWARDS & ANGELL, LLP
                                         101 Federal Street
                                         Boston, MA  02110
                                         (617) 439-4444

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, Defendants request an oral argument on their Motion, and state that hearing on their Motion should not take more than 30 minutes.

_____/s/ Windy L. Rosebush_____

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

Pursuant to Local Rule 7.1(A)(2), I, Windy L. Rosebush, hereby certify that, on November 11, 2004, I contacted Plaintiff's counsel, Dominic Finelli in a good faith attempt to resolve or narrow the issues presented in this Motion, and advised Attorney Finelli by voicemail that a Motion to Dismiss would be filed and served upon him on November 12, 2004 on the grounds set forth above unless a response was received indicating that the claims subject to the Motion would be voluntarily dismissed by the Plaintiff.  On November 12, 2004, Paul Tuttle from Attorney Finelli's office called indicating that the Plaintiff would not assent to the Motion or voluntarily dismiss the claims subject to the Motion to Dismiss.

_____/s/ Windy L. Rosebush_____

BOS_BOS_463328_1.DOC/TVANDYCK

## CERTIFICATE OF SERVICE

I, Windy L. Rosebush, hereby certify that on this 12th day of November, 2004, I caused a copy of the foregoing document to be served via first-class mail, to Domenic Finelli, Esq., Barrister Hall, 199 Revere Street, Revere, MA 02151.

_____/s/ Windy L. Rosebush_____

BOS_BOS_463328_1.DOC/TVANDYCK