UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERIK SHEEHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 04-12364-JGD |
| VERIZON COMMUNICATIONS, INC., | ) | |
| LAURA CARDINALE, LISA DAMASK, | ) | |
| CAROLYN DRISCOLL, PAUL | ) | |
| McGOVERN, LINDA RICHELSON, | ) | |
| DOREEN TOBEN and DOUG WILDER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON
DEFENDANTS' PARTIAL MOTION TO DISMISS AND
PLAINTIFF'S MOTION TO REMAND TO SUPERIOR COURT**

May 10, 2005

DEIN, U.S.M.J.

## I.  INTRODUCTION

This matter is before the court on Defendants' Partial Motion to Dismiss pursuant

to Fed. R. Civ. P. 12(b)(6) (Docket No. 6), whereby the defendants are seeking to dismiss

all claims against the individual defendants as well as Counts I (Negligent Supervision),

III (Sexual Harassment) and V (Aiding and Abetting Another to Violate Mass. Gen.

Laws. ch. 151B) of the Complaint.  In addition, this matter is before the court on

Plaintiff's Motion to Remand this Case to the Superior Court of Massachusetts pursuant

to Fed. R. Civ. P. 12(b)(1) (Docket No. 10), in which the plaintiff contends that there is a

lack of diversity among the parties due to the presence of the individual defendants, at

least one of whom resides in the Commonwealth.  For the reasons detailed herein, the

Defendants' Partial Motion to Dismiss is ALLOWED as to the individual defendants and

Count I of the Complaint, and otherwise DENIED.  The plaintiff shall have ten (10) days

from the date of this order to file an amended complaint asserting a claim against the

individual defendants in accordance with this order, if the facts so warrant.  The

Plaintiff's Motion to Remand is DENIED.

## II.  STATEMENT OF FACTS

### Standard of Review of the Record

The plaintiff, Erik Sheehan ("Sheehan"), has brought this action against his

employer, Verizon Communications, Inc. ("Verizon"), and various supervisory personnel

(collectively the "Individual Defendants").  The crux of his complaint is that he was

discriminated against based on his gender.  In ruling on a motion to dismiss, the Court is

required to accept as true all allegations in the complaint, and to draw all reasonable

inferences from those facts in the plaintiff's favor.  Kiely v. Raytheon Co., 105 F.3d 734,

735 (1st Cir. 1997).  Moreover, although bound by the pleaded facts of the complaint, the

Court may consider "any written instrument attached to it as an exhibit and any

statements or documents incorporated into it by reference."  Pauleman v. Tobin, 30 F.3d

307, 308-09 (2d Cir. 1994); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  In the

instant case, the Complaint references a complaint filed with the Massachusetts

Commission Against Discrimination ("MCAD") and various e-mails, copies of which are

attached to Defendants' Memorandum of Law in Support Of Their Partial Motion to

Dismiss ("Def. Mem.") (Docket No. 7).  These documents are appropriately considered in

connection with the pending motions.  See Beddal v. State St. Bank & Trust Co., 137

F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are

expressly linked to – and admittedly dependent upon – a document (the authenticity of

which is not challenged), that document effectively merges into the pleadings and the trial

court can review it in deciding a motion to dismiss under Rule 12(b)(6).").  Applying

these principals to the instant case, the relevant facts are as follows.

### Sheehan's Employment With Verizon

Sheehan began his employment with Verizon in the Compensation Administration

department on April 2, 2001.  Complaint ("Compl.") ¶ 13.  From the beginning of his

employment with Verizon, the defendant Linda Richelson ("Richelson") was his

immediate supervisor.  Id. ¶ 14.  The other Individual Defendants were supervisors,

officers, consultants and/or members of the Human Resources Department.  See id.

¶¶ 15-20.

Sheehan alleges that he was the only male in Richelson's workgroup and that, as

such, he was treated differently than the other members "because of his gender (male)."

Id. ¶¶ 21-22.  According to Sheehan, he was harassed both publicly and privately by

Richelson, who created a "hostile and abusive work environment" for him.  Id. ¶¶ 23-24.

Richelson's treatment eventually led to Sheehan's suffering adverse employment actions,

in which other Individual Defendants participated.  E.g., id. ¶¶ 25-26.

Richelson made several comments over the course of their working relationship that Sheehan alleges evidence her gender based animus towards men.  For example, on May 29, 2001, Richelson stated in an e-mail to Sheehan that "there is a difference between a working man and a working mother, but that is because I am one and it is my personal bias."  Id. ¶ 29.  In addition, Richelson compared Sheehan on several occasions with her ex-husband, towards whom she had expressed "hostility and hatred[.]" E.g., id. ¶¶ 30, 33.  For example, on June 7, 2001 she told Sheehan that "[y]ou remind me of my ex-husband"and proceeded to recite a negative incident involving her ex-husband, and concluded with "I'm the boss, I'll make all the decisions not you and I'm going to show you," apparently implying that this was a lesson both he and her ex-husband needed to learn.  Id. ¶ 30.  She followed this comment by threatening to replace Sheehan with a qualified female applicant at the earliest opportunity.  Id. ¶ 31.  Richelson again compared Sheehan with her ex-husband on August 15, 2001, saying "[m]y ex-husband was just like you.  He used to procrastinate all day and then he would get out of bed in the middle of the night, because he forgot to take care of something and he'd be up all night trying to finish whatever he put off and didn't get done during the day.  Maybe you're not like him, but you remind me of him.  I'm not happy."  Id. ¶ 33.  Finally, on October 30, 2001, in connection with an e-mail circulating among Laura Cardinale (Richelson's supervisor), Richelson and Richelson's female staff, and describing, tongue-in-cheek, the potential damage an all-female army invading Afghanistan could cause the

male-dominated Taliban, Richelson wrote "I can picture myself there with my current anger quotient!" See id. ¶ 35, e-mail attached to Def. Mem.

Sheehan reported these specific allegations, along with Richelson's general practice of belittling him in front of colleagues, to Verizon management on December 9, 2001, which led to an internal investigation of Sheehan's complaints. Compl. ¶ 36. In response, Richelson "assaulted and battered Sheehan" on December 14, 2001. Id. ¶ 37. Furthermore, she offered to pay a fellow employee for her help in the investigation of Sheehan's claims and falsified eleven documents that resulted in a negative employee evaluation of Sheehan, despite his being the top performer in his group. Id. ¶¶ 39, 42-43. As a result of this negative evaluation, Sheehan was demoted, transferred, and had his pay reduced. Id. ¶¶ 44-45. Another employee, who had come forward on Sheehan's behalf, was terminated under the false guise of a workforce reduction. Id. ¶¶ 40-41. Sheehan is still employed with Verizon.

## Procedural History

Sheehan filed a complaint with the MCAD on October 23, 2002. Id. ¶ 46. Verizon is the only Respondent named in the MCAD complaint. After initially dismissing the complaint, the MCAD reversed its decision and found probable cause on July 19, 2004. Compl. ¶ 49. The instant action was commenced in Suffolk Superior Court on September 4, 2004. Defendants then removed the case to federal court under diversity jurisdiction.

Defendants have moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all counts against the Individual Defendants, as well as the negligent supervision (Count I), sexual harassment (Count III), and aiding and abetting in violation of Mass. Gen. Laws ch. 151B (Count V) claims against all defendants. Sheehan has responded by moving to remand this action to state court for lack of complete diversity, pursuant to Fed. R. Civ. P. 12(b)(1).

### III.  ANALYSIS

A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957). Applying this standard, this court finds that the defendants' partial motion to dismiss must be allowed in part and denied in part.

### A.     The Individual Defendants

Defendants have moved to dismiss all the Individual Defendants from the suit because they were not named in the MCAD charge. Thus, the Individual Defendants assert that Sheehan has failed to exhaust his administrative remedies and that all the claims against them must be dismissed. This motion is ALLOWED without prejudice. The plaintiff has ten (10) days from the date of this order in which to file an amended complaint properly asserting claims against the Individual Defendants, if the facts so warrant.

Mass. Gen. Laws ch. 151B § 5 requires that a complaint charging discrimination first be filed with the MCAD within 300 days after the alleged act of discrimination. Mass. Gen. Laws ch. 151B, § 5, as amended by St. 2002, c. 223, § 1.  Regulations governing such proceedings require that the complaint contain "appropriate identification of the Complainant(s) and the person(s) alleged to have committed unlawful discrimi-natory acts[.]"  804 CMR § 1.10 (5)(d).  "The purpose of the requirement of filing a charge with the MCAD is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation."  Chatman v. Gentle Dental Ctr. of Waltham, 973 F. Supp. 228, 233 (D. Mass. 1997) (internal punctuation and citation omitted).  See also, Beaupre v. Cliff Smith & Assoc., 50 Mass. App. Ct. 480, 492, 738 N.E.2d 753, 765 (2000) (citing cases which "together emphasiz[e] the importance under c. 151B of sufficient notice being provided in the MCAD filing of the charges being made and of the parties deemed responsible, so as to allow both the opportunity to attempt early concilia-tion and a fair opportunity to litigate the issues raised").  Phrased another way, "[t]he dual purposes of the filing requirements are to provide the MCAD with an opportunity to investigate and conciliate a discrimination claim and to provide notice to an accused of a potential lawsuit."  Hayes v. Henri Bendel, Inc., 945 F. Supp. 374, 378 (D. Mass. 1996).

While the "failure to name a party in a charge filed with the MCAD may preclude the plaintiff from later maintaining a Chapter 151B claim in court against that party," the absence of a party as a named respondent is not, in and of itself, conclusive.  Chatman, 973 F. Supp. at 233.  Rather, the "failure to name a party as a respondent in a charge filed

with the MCAD does not preclude a later civil action against that party if the conduct of

the party was put in issue by the charge and the party had notice of and an opportunity to

conciliate the charge." Id. at 235. Accord Fink v. Printed Circuit Corp., 204 F. Supp. 2d

119, 129 (D. Mass. 2002) and cases cited. Whether a party has been sufficiently

identified in the MCAD complaint so as to allow a subsequent civil action to be brought

is "to be determined from a reading of the charge as a whole." Winters v. ADAP, Inc., 76

F. Supp. 2d 89, 93-94 (D. Mass. 1999) (quoting Chatman, 973 F. Supp. at 234).

Applying these principles to the instant case warrants the dismissal of the claims

against all the Individual Defendants.

### 1. Defendants Cardinale, Damask, Driscoll, McGovern, Toben, and Wilder

The defendants Cardinale, Damask, Driscoll, McGovern, Toben, and Wilder are

not mentioned by name at all in the MCAD charge, a copy of which is attached to the

Defendants' Memorandum (Docket No. 7). While Sheehan does assert in his MCAD

charge that he "complained several times to the human resources, the VP and the

President, but nothing was done," there are no identifying details which would put any of

the Individual Defendants on notice that their conduct was being put in issue by the

charge. Consequently, the claims against these Defendants must be dismissed.

Similarly, there is nothing in the charge or in the complaint in this action which

indicates that any of these defendants had notice of an MCAD charge being brought

against them individually, or an opportunity to conciliate the charge on their own behalf.

Absent such allegations, or allegations in any document "properly before the court" from

which it could even "reasonably be inferred" that these defendants had notice and an

opportunity to conciliate, the instant complaint against them must be dismissed.  Chapin

v. Univ. of Mass. at Lowell, 977 F. Supp. 72, 82 (D. Mass. 1997) (dismissing complaint

against individuals not named in MCAD charge).

       In his opposition to the motion to dismiss ("Pl. Opp.") (Docket No. 13), Sheehan

points to the affidavit of the defendant Paul McGovern (Docket No. 2) in support of his

contention that the Individual Defendants had notice of the charges.  See Pl. Opp. at 3-4.

That affidavit was filed with this court in connection with the removal of the action from

Superior Court.  Therein, McGovern attested to the fact that he is an attorney, that he

"served as Verizon's representative at the [MCAD]," and that, as part of his duties as the

"EEO Management Consultant" he "received and responded to" the MCAD charge.  See

McGovern Aff. at ¶¶ 2-4.  This affidavit, however, is of no assistance to the plaintiff.  As

an initial matter, this affidavit is not properly before the court in connection with the

motion to dismiss.  See, e.g., Chatman, 973 F. Supp. at 236 (court refused to consider

assertions in the plaintiff's brief or in "papers accompanying the brief" where the plaintiff

made allegations "concerning the notice to and participation of the individual defendants

in the proceedings before the MCAD," as those materials were not properly before the

court in connection with a motion to dismiss the individual defendants in that case).

Moreover, even assuming, arguendo, that this affidavit could be properly considered, the

affidavit makes it clear that McGovern was representing Verizon in the MCAD

proceeding.  There is nothing in the affidavit, or the MCAD charge, from which the court

can infer that McGovern knew that his conduct was at issue, or that he had the

opportunity to conciliate the MCAD charge on his own behalf.  Consequently, the motion

to dismiss is allowed as to McGovern as well.

### 2.    Defendant Linda Richelson

The MCAD charge expressly challenges the action of the defendant Linda

Richelson and, therefore, clearly puts her conduct at issue for the purposes of ch. 151B.

See  Chapin, 977 F. Supp. at 77 (MCAD charge clearly puts Chief of Police's conduct at

issue).  However, there is no evidence from which this court could even reasonably infer

that she had notice of the charge or an opportunity to conciliate the potential claim.  The

complaint is silent on Richelson's involvement, if any, with the MCAD proceedings, and

no other document referenced in the complaint contains any relevant facts.

Consequently, the complaint must be dismissed as to Richelson as well.[1]

### B.    Count I – Negligent Supervision

In addition to the Motion to Dismiss the Individual Defendants, Verizon asserts

that Count I, asserting a claim for negligent supervision, should be dismissed as to all

remaining parties because it is preempted by either Mass. Gen. Laws ch. 151B or the

---

[1]  In fact, although not properly before the court for consideration in connection with the present motion, in Richelson's affidavit filed in connection with the removal of this action from Superior Court, Richelson denies having any notice of the charge or any involvement with the MCAD proceeding, as her employment with Verizon ended around the time the charge was filed. See Affidavit of Linda Richelson (Docket No. 3) at ¶¶ 2-7.

Workers' Compensation statute. This court agrees and the motion to dismiss Count I of

the complaint is allowed.

"Chapter 151B provides a detailed framework to protect the citizens of the

Commonwealth against employment discrimination." Charland v. Muzi Motors, 417

Mass. 580, 583, 631 N.E.2d 555, 557 (1994). "Where, as here, c. 151B applies, its

comprehensive remedial scheme is exclusive, in the absence of an explicit legislative

command to the contrary." Green v. Wyman-Gordon Co., 422 Mass. 551, 557-558, 664

N.E.2d 808, 813 (1996). Admittedly, however, some cases recognize that pre-existing

common law claims may exist concurrently with claims under ch. 151B. See Charland,

417 Mass. at 586, 631 N.E.2d at 559 ("G.L. c. 151B provides the exclusive remedy for

employment discrimination not based on preexisting tort law.") (citing Comey v. Hill,

387 Mass. 11, 20, 438 N.E.2d 811, 817 (1982)).[2] Nevertheless, where, as here,

"plaintiff's common law claims are merely recast versions of [his] sexual harassment

claims under c. 151B, they are barred by that statute's exclusivity provision." Green, 442

Mass. at 558, 664 N.E.2d at 813.

In the instant case, plaintiff's claim of negligent supervision is identical to his

claims under ch. 151B. Consequently, the common law claim is pre-empted. See, e.g.,

Morehouse v. Berkshire Gas Co., 989 F. Supp. 54, 66-67 (D. Mass. 1997) (claim of

---

[2] In cases "where parallel [common law ] claims were brought alongside a chapter 151B claim" the asserted tort claim "was truly independent of the discrimination itself." Choroszy v. Wentworth Inst. of Tech., 915 F. Supp. 446, 451-52 (D. Mass. 1996), and cases cited.

"negligent failure to prevent, limit, or mitigate the actions of the individual defendants"

seeks to restate claim for sexual harassment and is governed by ch. 151B); Choroszy v.

Wentworth Inst. of Tech., 915 F. Supp. 446, 451 (D. Mass. 1996) (in allowing a motion

to dismiss a claim of negligent supervision the court rules that "[t]he fact that [plaintiff]

describes what he suffered as damages flowing from negligent supervision rather than

from employment discrimination does not change the essence of his claim, which he

originally characterized as a discrimination claim").

Sheehan's claim for emotional distress damages arising out of the alleged negli-

gent supervision is further barred by the Worker's Compensation Act.  See Compl. ¶ 57.

"The Worker's Compensation Act M.G.L. c. 152 provides the exclusive remedy by which

an employee can recover damages for personal injuries sustained in the course of and

arising out of his or her employment."  Dorn v. Astra USA, 975 F. Supp. 388, 395 (D.

Mass. 1997).  It is well established that "mental distress arising out of an employment

relationship is a personal injury compensable under the workers compensation act[.]"

Felinska v. New England Teamsters & Trucking Indus. Pension Fund, 855 F. Supp. 474,

478 (D. Mass. 1994).  Therefore, claims of negligent supervision such as Sheehan's,

which seek "relief for emotional distress resulting from continuous harassment in the

workplace," are appropriately dismissed as preempted.  Id.  Accord Tavares de Almeida

v. Children's Museum, 28 F. Supp. 2d 682, 689 (D. Mass. 1998); Clarke v. Kentucky

Fried Chicken of Cal., 57 F.3d 21, 28-29 (1ˢᵗ Cir. 1995); Choroszy, 915 F. Supp. at 452.

For all these reasons, the motion to dismiss Count I of the Complaint is allowed.[3]

### C.     Count III - Sexual Harassment

Verizon has also moved to dismiss Count III of the complaint, alleging sexual

harassment under Mass. Gen. Laws ch. 151B § 4(16A).  Since this court cannot

determine on the present record that there are no facts which would entitle Sheehan to

relief under this claim, the motion to dismiss Count III is denied.

Mass. Gen. Laws ch. 151B § 4(16A) makes it unlawful for "an employer,

personally or through its agents, to sexually harass any employee."  Mass. Gen. Laws ch.

151B, § 1(18) defines sexual harassment as:

> sexual advances, requests for sexual favors, and other verbal or
> physical conduct of a sexual nature when (a) submission to or
> rejection of such advances, requests or conduct is made either
> explicitly or implicitly a term or condition of employment or as a
> basis for employment decisions; (b) such advances, requests or
> conduct have the purpose or effect of unreasonably interfering with
> an individual's work performance by creating an intimidating,
> hostile, humiliating or sexually offensive work environment.
> Discrimination on the basis of sex shall include, but not be limited
> to, sexual harassment.

Emphasis added.  In the instant case, Sheehan is not claiming "quid pro quo harassment"

as identified in subpart (a) above.  Rather, he asserts that he was subjected to the sexual

harassment described in part (b) — "hostile work environment" sexual harassment.  See

College-Town v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 162, 508

---

[3] Due to this ruling this court will not address the defendants' alternative theory that their duty to supervise did not run to the plaintiff.

N.E.2d 587, 591 (1987) (discrimination prohibited by Mass. Gen. Laws ch. 151B § 4

"encompasses a work environment pervaded by abuse and harassment").  The complaint

alleges sufficient facts to survive a motion to dismiss this claim.

> A *prima facie* showing of a hostile work environment requires
> Plaintiff to demonstrate that (i) [he] was subjected to unwelcome,
> unwanted harassment (which is either sexual in nature, or based
> upon [his] sex), and that (ii) the harassment was severe and
> pervasive enough to create an abusive environment (iii) about which
> [his] employer knew or should have known.

Rose v. Baystate Med. Ctr., Inc., 985 F. Supp. 211, 217 (D. Mass. 1997), and cases cited.

"In analyzing a claim of sexual harassment based on hostile work environment, the court

should consider whether a defendant's conduct created a barrier, based solely on gender,

to the plaintiff's full and untrammeled participation in the workplace."  Morehouse v.

Berkshire Gas Co., 989 F. Supp. 54, 61 (D. Mass. 1997) (internal citation and

punctuation omitted).  Based on the allegations made in his complaint, it is clear that

Sheehan is alleging that he was harassed and degraded, and was demoted and prevented

from advancement within Verizon due to the fact that he is a male.  Thus, a barrier was

erected preventing Sheehan's success within the company, and because this barrier was

based on Sheehan's sex, Count III cannot be dismissed.[4]

---

[4] To the extent that the defendants have argued that the claim should be dismissed
because the facts as alleged do not rise to the level of a hostile work environment, this court finds
that Sheehan has alleged sufficient facts to survive a motion to dismiss, and that further inquiry as
to the sufficiency of the merits of his claim should await development of the record through
discovery.

The defendants argue that the conduct in question was not "of a sexual nature" as required by Mass. Gen. Laws ch. 151B, § 1(18), and, as such, cannot constitute sexual harassment.  This argument is based on too limited a reading of the statute.  Although Chapter 151B, § 1(18) requires the harassment to be of "a sexual nature," this does not limit the scope of the offensive conduct to requests for sexual favors.  Sheehan was harassed specifically because he was a male, the comments allegedly directed at him reflected his supervisor's view of males, and, thus, the comments were of a "sexual nature."  See, e.g., Brissette v. Franklin County Sheriff's Office, 235 F. Supp. 2d 63, 89 (D. Mass. 2003) (plaintiffs prevail on hostile work environment claim under Mass. Gen. Laws ch. 151B where harassment included epithets directed at or about women, deprecation of the professional abilities of females, insubordination to women of rank, and a pattern of conduct designed to undermine women as supervisors, among other things); Belanger v. Saint-Gobain Indus. Ceramics, Inc., No. 95-1767B, 9 Mass. L. Rep. 581, 1999 Mass. Super. LEXIS 89, *8 (February 24, 1999) (comments that plaintiff was a homosexual concerned his "sexual orientation and are therefore unequivocally 'of a sexual nature.'").  See also Prader v. Leading Edge Prods., Inc., 39 Mass. App. Ct. 616, 619, 659 N.E.2d 756, 759 (1996) (plaintiff failed to establish sexually hostile work place where "she produced no evidence that those remarks constituted sexual harassment as defined by the statute or were directed to her based on her sex.") (emphasis added).  The motion to dismiss Count III of the Complaint is, therefore, denied.

   D.    **Count V – Aiding and Abetting**

Mass. Gen. Laws ch. 151B § 4(5) makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."  Verizon has moved to dismiss Count V of the Complaint alleging a violation of this provision on the grounds that Verizon "cannot as a matter of law, aid and abet itself in its own act."  Def. Mem. at 18.  While this court has serious questions as to whether this claim for "aiding" or "abetting" "is completely superfluous of the underlying claims for sexual harassment and . . . sex discrimination" thereby warranting its dismissal, that question is best determined after a more complete development of the factual record.  See Richards v. Walter Fernald State Sch., No. 96-1327, 12 Mass. L. Rep. 180, 2000 Mass. Super. LEXIS 355, *13 (July 31, 2000) (dismissing aiding and abetting claim on summary judgment).  This court finds that the complaint does state a claim as a matter of law, and the motion to dismiss Count V is denied.

Verizon does not challenge the proposition that a corporate employer may be liable for aiding and abetting along with its employees.  See, e.g., Beaupre v. Cliff Smith & Assoc., 50 Mass. App. Ct. 480, 494-96, 738 N.E.2d 753, 766-67 (2000) (company president may be liable for aiding and abetting the company's sexual harassment of the plaintiff, as corporation has a separate existence).  However, Verizon argues that the dismissal of the Individual Defendants requires the dismissal of the aiding and abetting claim.  Nevertheless, Verizon cites no support for its conclusion that the dismissal of the

16

Individual Defendants shields the company from liability for aiding and abetting.[5]  Absent

such authority, this court will not dismiss the aiding and abetting claim at this time but

will revisit the issue if appropriate after the factual record is developed.

An employer can "be held liable as a principal discriminator *and* an aider and

abettor of discrimination at the same time.  It is possible to envision a situation where an

employer discriminates and, at the same time, encourages someone to do likewise."

Debarboza v. Cablevision of Boston, Inc., No. 98-4244-E, 9 Mass. L. Rep. 539, 1999

Mass. Super. LEXIS 43, *5 (Jan. 29, 1999).  In the instant action, Sheehan has

specifically alleged that Richelson discriminated against him on the basis of his gender,

and that she was aided by Verizon in perpetrating this discrimination.  See Compl. ¶¶ 34,

41 (allegations that other employees independently reported Richelson's actions, and

were either ignored or suffered adverse employment actions as a result).  Furthermore,

Sheehan has alleged that Verizon directly discriminated against him by transferring him

to different departments and reducing his pay in response to his complaints against

Richelson.  Compl. ¶ 44.  From these facts, if proven, a jury may find that Verizon both

directly discriminated against Sheehan and aided and abetted Richelson's campaign of

harassment against Sheehan.  Consequently, the defendants' challenge to this aiding and

abetting claim is premature, and the motion to dismiss Count V is denied.

---

[5]  As the Individual Defendants' conduct will be presented at trial even though the claims
against them have been dismissed, there may be sufficient evidence for a jury to evaluate the
aiding and abetting claim against the company.

**E.    Motion to Remand**

The plaintiff has moved to remand this case to the Massachusetts Superior Court on the grounds that there is not complete diversity between the plaintiff and the Individual Defendants.  He does, however, admit that there is complete diversity between Sheehan and Verizon.  Since the Individual Defendants have been dismissed from this case, the motion to remand must be denied, as there is complete diversity between the parties.

## IV.  CONCLUSION

For all the reasons detailed herein, the Defendants' Partial Motion to Dismiss (Docket No. 6) is ALLOWED IN PART AND DENIED IN PART.  This action is dismissed as to the Individual Defendants, without prejudice, and as to Count I of the Complaint – Negligent Supervision, with prejudice.  The plaintiff may file an amended complaint establishing that he exhausted his administrative remedies at the MCAD with respect to the Individual Defendants (consistent with this opinion), within ten (10) days of the date of this Order, if such facts exist.

The Plaintiff's Motion to Remand (Docket No. 10) is DENIED without prejudice. The motion may be renewed if an amended complaint establishes jurisdiction over any of the Individual Defendants.

                                    / s / Judith Gail Dein
                                    Judith Gail Dein
                                    United States Magistrate Judge