**Damask, Lisa**

| | |
|---|---|
| **From:** | Driscoll, Carolyn |
| **Sent:** | Monday, June 17, 2002 5:03 PM |
| **To:** | Damask, Lisa |
| **Subject:** | DRAFT - Case Issues |

- DRAFT -

Erik,

We appreciate your concerns and have demonstrated by the compliance investigation the seriousness of your allegations. As you know, Paul McGovern, has concluded the investigation and appropriate action has been taken and the case is closed. The following information is provided to address your additional questions written in your e-mail.

**Documentation**

- A copy of the documentation you sent to me on December 9, 2001 will be FedEx'd to your home for delivery on June __, 2002.

**2001 Appraisal, VIP and Merit**

- The 2001 appraisal and rating was based on your individual performance as relative to the other managers on the team. The document outlines your accomplishments and areas for improvement. You may provide additional comments to be considered and retained with your appraisal. The VIP and Merit award that you received are in line with the rating, the rating and award will not be changed.

**Demotions**

- The position you were offered in December 2001 reporting to Pam McEleney was a lateral transfer at a career level 2. As documented in the Verizon Compensation Plan, the movement between the 2M and 2L is a lateral move. The pay range, VIP target and all other compensation are identical.
- In December, you also wanted us to ensure that you were releasable because you were looking for a position outside of my organization. It was confirmed to you on several occasions that you were releasable. In January you notified us that you had found another position and, as we committed, you were released to accept the position you applied for outside of finance. You accepted this position on your own accord.

**Director Vacancy**

- The investigation conducted by Paul McGovern did not substantiate your concern regarding possible interference in the investigation. I can assure you that the staffing guidelines were followed and the appropriate business decisions will be made.

I wish you the best of luck as you move forward with Verizon.

Thank you.

Doug


Erik Sheehan
05/20/2002 06:00 PM

To:    Doug Wilder/EMPL/NY/Bell-Atl@VZNotes
cc:
Subject:    Case Issues

Doug,

1

VER0578

I contacted Paul McGovern from the compliance office and had an opportunity to speak with him last Friday. Mr. McGovern thanked me for bringing the case to the attention of the compliance office. In addition, Mr. McGovern informed me, that although they were unable to verify gender discrimination had occurred, he did prove misconduct on the part of Ms. Richelson. I was also informed that appropriate steps were being taken against Ms. Richelson in order to address the problem. At this point, I would like to add that although he did not verify the occurrence of gender discrimination and harassment; that does not mean it did not occur. Therefore, could you please FedEx my original statement and any additional documentation I provided to you, to my home address:

250 Reservoir Ave.
Revere, MA 02151


As you aware, there are some outstanding issues that need to be addressed in order to make me whole. These items include the following: inaccurate evaluation, no raise, 3% VIP and two demotions. Unfortunately, we were unable to discuss these issues while there was an active investigation. However, now that the investigation has concluded and my statement has been corroborated, they must be resolved. The following is a brief synopsis on each of my issues:

Inaccurate Evaluation, no raise, 3% VIP:
·      Ms. Richelson was allowed to compose my evaluation while there was an active investigation    into her misconduct against me.
·      I provided numerous examples where Ms. Richelson created inaccurate documentation in   regards to my performance. If one example of Ms. Richelson's documentation is inaccurate and      misleading, it should all be called into question. When there are eleven such examples, to accept further documentation as accurate goes against common sense.
·      There is a potential for retribution by both Ms. Richelson and Ms. Cardinale given I was a       whistle blower on both individuals.
·      I provided a number of examples where Ms. Richelson set me up for failure.
·      I never had a formal objective setting session.
·      Ms. Richelson stated there was a three-year learning curve, but I never received any formal        training.
·      I did not have a mid-year review. Ms. Richelson did not complete my mid-year review until   mid December, but she never met with me to discuss it.
·      If Ms. Richelson felt I wasn't meeting objectives (which I never got), she has an obligation to      provide me an action plan on how she and I were going to work together to reach those            objectives. This never happened.
·      I worked an estimated 800 hours of overtime for Ms. Richelson. This was done on personal      time (nights, weekends and holidays.) I was never compensated for these hours, nor was I      granted time off.
·      I inherited a group that in Ms. Richelson's own words, "was in dire shape." And transformed the   group.
·      My clients, the BPC and Compensation Design, have commended the tremendous          improvements I have made with the team. Ms. Richelson did not seek input from my clients,     which is a tangible way of measuring my performance.
·      I was nominated for the Leaders in Excellence award, while working for Ms. Richelson.


When I originally raised this issue, you asked Lisa Damask from HR to address my concerns. My conversation with Ms. Damask was non-productive. Her demeanor was standoffish; to the point where she stated, "none of the examples you provided of inaccurate documentation, dealt with performance." There is no doubt, that every example I provided, clearly dealt with my performance. The end result of our conversation was that Ms. Damask would contact me at the conclusion of the investigation and we would revisit the issue. I still have not bee contacted by Ms.

2

VER0579

Damask.

Two demotions:
     After being assaulted by Ms. Richelson, I was contacted via conference call by VP Laura Cardinale, Lisa Damask and Carolyn Driscoll from HR. I was told they planned to move me to another position within Ms. Cardinale's organization. Lisa Damask informed me that I, "."?will maintain my current 2nd level status." Therefore, I agreed to the move. At the time, I was under the career band 2M. My new position turned out to be what is classified as a 2L, which was a demotion. This position is a demotion, because a 2L often times reports to a 2M. If the positions were equal, one would not be able to report to the other. Based on the past indiscretions of Ms. Cardinale and that of the HR department, I realized that I was placing my livelihood in jeopardy by staying in VP Cardinale's organization and therefore, I had to take a further demotion in order to leave the group. If you would like clarification on these indiscretions, please let me know.


     As a resolution, I am asking for the following:
·     My year-end 2001 evaluation be destroyed and a new accurate evaluation composed.
·     My raise and VIP reflect this new evaluation.
·     A promotion back to my 2M job title outside the Finance organization.


If you are unable to resolve these issues, please let me know whom I should speak to, in order to have them addressed. If this must be handled through the HR department, please do not ask them to contact me; I will pursue the issue myself. I am no longer going to deal with Ms. Damask or Ms. Driscoll on this issue.


     Finally, I was informed that Ms. Richelson's position is now vacant and Linda Digiglio is a leading candidate for the job. During the investigation, I was informed that Ms. Richelson met with Ms. Digiglio and stated, "I'll take care of you on your evaluation, if you take care of me during this investigation." I did inform Paul McGovern at the time. I do not know if there is any truth to this. I do not know what she received for an evaluation this year, or last. I don't know if she was honest during the investigation, or even if she is a candidate.  I felt you should know; I am sure you will give due diligence to anyone who is selected to fill that position. I would hope Verizon does not reward someone for covering up misconduct.

                              Thank you for your time.


                              Erik Sheehan
                              781.677.5551 (pager)

VER0580

## Driscoll, Carolyn

**From:**      Damask, Lisa
**Sent:**      Tuesday, June 04, 2002 5:31 PM
**To:**        Driscoll, Carolyn
**Subject:**   FW: Case Issues


-----Original Message-----
From: Parsons, Gail
Sent: Tuesday, May 21, 2002 10:48 AM
To: Damask, Lisa
Subject: Case Issues


Let's discuss when I call you today.
-------------------- Forwarded by Gail Parsons/EMPL/NY/Verizon on
05/21/2002 10:45 AM --------------------


Doug Wilder
05/21/2002 08:31 AM

To:   Gail Parsons/EMPL/NY/Verizon@VZNotes
cc:
Subject:   Case Issues

Please call me at x1767 to advise.
-------------------- Forwarded by Doug Wilder/EMPL/NY/Bell-Atl on
05/21/2002 08:32 AM --------------------


Erik Sheehan
05/20/2002 06:00 PM

To:   Doug Wilder/EMPL/NY/Bell-Atl@VZNotes
cc:
Subject:   Case Issues

Doug,

    I contacted Paul McGovern from the compliance office and had an
opportunity to speak with him last Friday. Mr. McGovern thanked me for
bringing the case to the attention of the compliance office. In addition,
Mr. McGovern informed me, that although they were unable to verify gender
discrimination had occurred, he did prove misconduct on the part of Ms.
Richelson. I was also informed that appropriate steps were being taken
against Ms. Richelson in order to address the problem. At this point, I
would like to add that although he did not verify the occurrence of gender
discrimination and harassment; that does not mean it did not occur.
Therefore, could you please FedEx my original statement and any additional
documentation I provided to you, to my home address:

250 Reservoir Ave.
Revere, MA 02151

    As you aware, there are some outstanding issues that need to be

1

VER0597

addressed in order to make me whole. These items include the following: inaccurate evaluation, no raise, 3% VIP and two demotions. Unfortunately, we were unable to discuss these issues while there was an active investigation. However, now that the investigation has concluded and my statement has been corroborated, they must be resolved. The following is a brief synopsis on each of my issues:

Inaccurate Evaluation, no raise, 3% VIP:

   Ms. Richelson was allowed to compose my evaluation while there was an active investigation into her misconduct against me.

   I provided numerous examples where Ms. Richelson created inaccurate documentation in regards to my performance. If one example of Ms. Richelson's documentation is inaccurate and misleading, it should all be called into question. When there are eleven such examples, to accept further documentation as accurate goes against common sense.

   There is a potential for retribution by both Ms. Richelson and Ms. Cardinale given I was a whistle blower on both individuals.

   I provided a number of examples where Ms. Richelson set me up for failure.

   I never had a formal objective setting session.

   Ms. Richelson stated there was a three-year learning curve, but I never received any formal training.

   I did not have a mid-year review. Ms. Richelson did not complete my mid-year review until mid December, but she never met with me to discuss it.

   If Ms. Richelson felt I wasn't meeting objectives (which I never got), she has an obligation to provide me an action plan on how she and I were going to work together to reach those objectives. This never happened.

   I worked an estimated 800 hours of overtime for Ms. Richelson. This was done on personal time (nights, weekends and holidays.) I was never compensated for these hours, nor was I granted time off.

   I inherited a group that in Ms. Richelson's own words, "was in dire shape." And transformed the group.

   My clients, the BPC and Compensation Design, have commended the tremendous improvements I have made with the team. Ms. Richelson did not seek input from my clients, which is a tangible way of measuring my performance.

   I was nominated for the Leaders in Excellence award, while working for Ms. Richelson.


When I originally raised this issue, you asked Lisa Damask from HR to address my concerns. My conversation with Ms. Damask was non-productive. Her demeanor was standoffish; to the point where she stated, "none of the examples you provided of inaccurate documentation, dealt with performance." There is no doubt, that every example I provided, clearly dealt with my performance. The end result of our conversation was that Ms. Damask would contact me at the conclusion of the investigation and we would revisit the issue. I still have not bee contacted by Ms. Damask.

Two demotions:

   After being assaulted by Ms. Richelson, I was contacted via conference call by VP Laura Cardinale, Lisa Damask and Carolyn Driscoll from HR. I was told they planned to move me to another position within Ms. Cardinale's organization. Lisa Damask informed me that I, ".."?will maintain my current 2nd level status." Therefore, I agreed to the move. At the time, I was under the career band 2M. My new position turned out to be what is classified as a 2L, which was a demotion. This position is a demotion, because a 2L often times reports to a 2M. If the positions

VER0598

were equal, one would not be able to report to the other. Based on the past indiscretions of Ms. Cardinale and that of the HR department, I realized that I was placing my livelihood in jeopardy by staying in VP Cardinale's organization and therefore, I had to take a further demotion in order to leave the group. If you would like clarification on these indiscretions, please let me know.

As a resolution, I am asking for the following:
My year-end 2001 evaluation be destroyed and a new accurate evaluation composed.
My raise and VIP reflect this new evaluation.
A promotion back to my 2M job title outside the Finance organization.

If you are unable to resolve these issues, please let me know whom I should speak to, in order to have them addressed. If this must be handled through the HR department, please do not ask them to contact me; I will pursue the issue myself. I am no longer going to deal with Ms. Damask or Ms. Driscoll on this issue.

Finally, I was informed that Ms. Richelson's position is now vacant and Linda Digiglio is a leading candidate for the job. During the investigation, I was informed that Ms. Richelson met with Ms. Digiglio and stated, "I'll take care of you on your evaluation, if you take care of me during this investigation." I did inform Paul McGovern at the time. I do not know if there is any truth to this. I do not know what she received for an evaluation this year, or last. I don't know if she was honest during the investigation, or even if she is a candidate. I felt you should know; I am sure you will give due diligence to anyone who is selected to fill that position. I would hope Verizon does not reward someone for covering up misconduct.

Thank you for your time.

Erik Sheehan
781.677.5551 (pager)

**VER0599**

## Driscoll, Carolyn

| | |
|---|---|
| **From:** | Damask, Lisa |
| **Sent:** | Friday, June 28, 2002 2:22 PM |
| **To:** | Wilder, Doug |
| **Cc:** | Driscoll, Carolyn |
| **Subject:** | Private: Eric Sheehan |

>Doug,
Attached for your review is a message to be sent in response to Eric Sheehan's email. Please pay particular attention to the 2001 Appraisal section (the appraisal was not part of the EEO investigation). We are comfortable with the response that the appraisal/rating will not change, since it was reviewed and approved by Laura Cardinale. Call with any questions or comments.
Lisa
610-407-2006
>
>            - DRAFT -
>
> Erik,
>
> We appreciate your concerns and have demonstrated by the compliance
> investigation the seriousness of your allegations. As you know, Paul
> McGovern, has concluded the investigation and appropriate action has been
> taken and the case is closed. The following information is provided to
> address your additional questions outlined in your e-mail.
>
> Documentation
>
> *   A copy of the documentation you sent to me on December 9, 2001 will
> be FedEx'd to your home for delivery on June ___, 2002.
>
> 2001 Appraisal, VIP and Merit
>
> *   The 2001 appraisal and rating was based on your individual
> performance as relative to the other managers on the team. The document
> outlines your accomplishments and areas for improvement. You may provide
> additional comments to be considered and retained with your appraisal.
> The VIP and Merit award that you received are in line with the rating,
the
> rating and award will not be changed.
>
> Demotions
>
> *   The position you were offered in December 2001 reporting to Pam
> McEleney was a lateral transfer at a career level 2. As documented in
the
> Verizon Compensation Plan, the movement between the 2M and 2L is a
lateral
> move. The pay range, VIP target and all other compensation are
identical.
> *   In December, you also wanted us to ensure that you were releasable
> because you were looking for a position outside of my organization. It
> was confirmed to you on several occasions that you were releasable. In
> January you notified us that you had found another position and, as we

VER0602

1

> committed, you were released to accept the position you applied for
> outside of finance. You accepted this position on your own accord.
>
> Director Vacancy
> *   The investigation conducted by Paul McGovern did not substantiate
> your concern regarding possible interference in the investigation. I can
> assure you that the staffing guidelines were followed and the appropriate
> business decisions will be made.
>
> I wish you the best of luck as you move forward with Verizon.
>
> Thank you.
>
> Doug
>
>
> Erik Sheehan
> 05/20/2002 06:00 PM
>
> To:    Doug Wilder/EMPL/NY/Bell-Atl@VZNotes
> cc:
> Subject:    Case Issues
>
> Doug,
>
>     I contacted Paul McGovern from the compliance office and had an
> opportunity to speak with him last Friday. Mr. McGovern thanked me for
> bringing the case to the attention of the compliance office. In addition,
> Mr. McGovern informed me, that although they were unable to verify gender
> discrimination had occurred, he did prove misconduct on the part of Ms.
> Richelson. I was also informed that appropriate steps were being taken
> against Ms. Richelson in order to address the problem. At this point, I
> would like to add that although he did not verify the occurrence of
gender
> discrimination and harassment; that does not mean it did not occur.
> Therefore, could you please FedEx my original statement and any
additional
> documentation I provided to you, to my home address:
>
> 250 Reservoir Ave.
> Revere, MA 02151
>
>
>     As you aware, there are some outstanding issues that need to be
> addressed in order to make me whole. These items include the following:
> inaccurate evaluation, no raise, 3% VIP and two demotions. Unfortunately,
> we were unable to discuss these issues while there was an active
> investigation. However, now that the investigation has concluded and my
> statement has been corroborated, they must be resolved. The following is
a
> brief synopsis on each of my issues:
>
> Inaccurate Evaluation, no raise, 3% VIP:
> -     Ms. Richelson was allowed to compose my evaluation while there was
> an
> active investigation   into her misconduct against me.
> ·     I provided numerous examples where Ms. Richelson created inaccurate
> documentation in  regards to my performance. If one example of Ms.
> Richelson's documentation is inaccurate and    misleading, it should all
> be called into question. When there are eleven such examples, to accept
> further documentation as accurate goes against common sense.
> -     There is a potential for retribution by both Ms. Richelson and Ms.
> Cardinale given I was a    whistle blower on both individuals.
> ·     I provided a number of examples where Ms. Richelson set me up for

2

**VER0603**

> failure.

> ·    I never had a formal objective setting session.

> ·    Ms. Richelson stated there was a three-year learning curve, but I
> never received any formal    training.

> ·    I did not have a mid-year review. Ms. Richelson did not complete my
> mid-year review until   mid December, but she never met with me to
discuss
> it.

> ·    If Ms. Richelson felt I wasn't meeting objectives (which I never
> got), she has an obligation to    provide me an action plan on how she
> and I were going to work together to reach those        objectives.
> This never happened.

> ·    I worked an estimated 800 hours of overtime for Ms. Richelson. This
> was done on personal   time (nights, weekends and holidays.) I was never
> compensated for these hours, nor was I    granted time off.

> ·    I inherited a group that in Ms. Richelson's own words, "was in dire
> shape." And transformed the   group.

> ·    My clients, the BPC and Compensation Design, have commended the
> tremendous      improvements I have made with the team. Ms. Richelson
> did
> not seek input from my clients,     which is a tangible way of measuring
> my
> performance.

> ·    I was nominated for the Leaders in Excellence award, while working
> for Ms. Richelson.

>
>
>    When I originally raised this issue, you asked Lisa Damask from HR
> to
>    address my concerns. My conversation with Ms. Damask was
> non-productive.
>    Her demeanor was standoffish; to the point where she stated, "none of
>    the examples you provided of inaccurate documentation, dealt with
>    performance." There is no doubt, that every example I provided,
clearly
>    dealt with my performance. The end result of our conversation was that
>    Ms. Damask would contact me at the conclusion of the investigation and
>    we would revisit the issue. I still have not bee contacted by Ms.
>    Damask.
>
>    Two demotions:
>    After being assaulted by Ms. Richelson, I was contacted via
>    conference call by VP Laura Cardinale, Lisa Damask and Carolyn
Driscoll
>    from HR. I was told they planned to move me to another position within
>    Ms. Cardinale's organization. Lisa Damask informed me that I, "."?will
>    maintain my current 2nd level status." Therefore, I agreed to the
move.
>    At the time, I was under the career band 2M. My new position turned
out
>    to be what is classified as a 2L, which was a demotion. This position
> is
>    a demotion, because a 2L often times reports to a 2M. If the positions
>    were equal, one would not be able to report to the other. Based on the
>    past indiscretions of Ms. Cardinale and that of the HR department, I
>    realized that I was placing my livelihood in jeopardy by staying in VP
>    Cardinale's organization and therefore, I had to take a further
> demotion
>    in order to leave the group. If you would like clarification on these
>    indiscretions, please let me know.
>
>
>    As a resolution, I am asking for the following:

> ·    My year-end 2001 evaluation be destroyed and a new accurate

VER0604

3

> evaluation composed.
> ·    My raise and VIP reflect this new evaluation.
> ·    A promotion back to my 2M job title outside the Finance
> organization.
>
>
> If you are unable to resolve these issues, please let me know whom I
> should
> speak to, in order to have them addressed. If this must be handled
through
> the HR department, please do not ask them to contact me; I will pursue
the
> issue myself. I am no longer going to deal with Ms. Damask or Ms.
Driscoll
> on this issue.
>
>
>    Finally, I was informed that Ms. Richelson's position is now vacant
> and Linda Digiglio is a leading candidate for the job. During the
> investigation, I was informed that Ms. Richelson met with Ms. Digiglio
and
> stated, "I'll take care of you on your evaluation, if you take care of me
> during this investigation." I did inform Paul McGovern at the time. I do
> not know if there is any truth to this. I do not know what she received
> for
> an evaluation this year, or last. I don't know if she was honest during
> the
> investigation, or even if she is a candidate. I felt you should know; I
> am
> sure you will give due diligence to anyone who is selected to fill that
> position. I would hope Verizon does not reward someone for covering up
> misconduct.
>
>                          Thank you for your time.
>
>
>                          Erik Sheehan
>                          781.677.5551 (pager)
>
>
>
>
>
>

VER0605

**Driscoll, Carolyn**

**To:** McGovern, Paul
**Subject:** Private and Confidential

Paul,

*As discussed, I would appreciate any comments you have on the draft response to Erik.*

Cari

- DRAFT -

Erik,

The following is in response to your e-mail dated May 20, 2002. However, before I address your concerns, I know you *can appreciate that Verizon has a duty of protecting the privacy of all employees.* Just as we hold your situation confidential, I will not be free to discuss your inquiries regarding other employees. I've outlined your questions and provided a response in the following four areas:

**Documentation**

- ~~I will have a~~ copy of the documentation you sent to me on December 9, 2001 FedEx'd to your home for delivery on June __, 2002.

**2001 Appraisal, VIP and Merit**

- 2001 Appraisal - As part of the performance appraisal process employees may included their comments to be added to the appraisal. *If you want to provide comments and/or documentation, they will be reviewed and* retained with your 2001 appraisal. Your performance appraisal reflected many examples of performance deficiencies to substantiate your ratings, which will not be changed.
- Your VIP and Merit were awarded based on compensation guidelines.

**Demotions**

- You were contacted by Human Resources, at my request, in December 2001 when you did not want to go back to work for Linda Richelson. I had another second level position in Pam McEleney's group which was offered to you and you accepted. It is not a demotion, you remained at the same career level. Your pay range, VIP target and all other compensation are identical. Per the ~~companies~~ reclassification and promotion *policies movement between the Individual Contributor and Manager Career path is a lateral move.* I have included the following links to the policies on the compensation website:
  http://hr.verizon.com/compensation/reclass_policy.pdf,
  http://hr.verizon.com/compensation/promotionpolicy.pdf
- In December, you also wanted us to ensure that you were releasable because you were looking for a position outside of my organization. It was confirmed to you on several occasions that you were releasable. In January you notified us that you had found another position and, as we committed, you were released to *accept the position you applied for outside of finance. You accepted this position on your own accord.* My organization had no hand in arranging this position.

**Director Vacancy**

- The investigation conducted by Paul McGovern did not substantiate your concern regarding possible interference in the investigation. To reiterate it would be inappropriate for me to comment any further on the *specific individuals. I can assure you that the staffing guidelines were followed and the appropriate business* decisions will be made.

Erik, I appreciate your concerns and I'm pleased that the investigation has been completed and appropriate action has been taken.

I wish you the best of luck as you move forward with Verizon.

~~Thank you for bringing these questions to my attention.~~

Doug Wilder

---------------------- Forwarded by Doug Wilder/EMPL/NY/Bell-Atl on
05/21/2002 08:32 AM -------------------------

Erik Sheehan
05/20/2002 06:00 PM

To:     Doug Wilder/EMPL/NY/Bell-Atl@VZNotes
cc:
Subject:    Case Issues

Doug,

        I contacted Paul McGovern from the compliance office and had an
opportunity to speak with him last Friday. Mr. McGovern thanked me for
bringing the case to the attention of the compliance office. In addition,
Mr. McGovern informed me, that although they were unable to verify gender
discrimination had occurred, he did prove misconduct on the part of Ms.
Richelson. I was also informed that appropriate steps were being taken
against Ms. Richelson in order to address the problem. At this point, I
would like to add that although he did not verify the occurrence of gender
discrimination and harassment; that does not mean it did not occur.
Therefore, could you please FedEx my original statement and any additional
documentation I provided to you, to my home address:

250 Reservoir Ave.
Revere, MA 02151


        As you aware, there are some outstanding issues that need to be
addressed in order to make me whole. These items include the following:
inaccurate evaluation, no raise, 3% VIP and two demotions. Unfortunately,
we were unable to discuss these issues while there was an active
investigation. However, now that the investigation has concluded and my
statement has been corroborated, they must be resolved. The following is a
brief synopsis on each of my issues:

Inaccurate Evaluation, no raise, 3% VIP:
        Ms. Richelson was allowed to compose my evaluation while there was an
active investigation    into her misconduct against me.
        I provided numerous examples where Ms. Richelson created inaccurate
documentation in  regards to my performance. If one example of Ms.
Richelson's documentation is inaccurate and       misleading, it should all
be called into question. When there are eleven such examples, to accept
further documentation as accurate goes against common sense.
        There is a potential for retribution by both Ms. Richelson and Ms.
Cardinale given I was a        whistle blower on both individuals.
        I provided a number of examples where Ms. Richelson set me up for
failure.
        I never had a formal objective setting session.
        Ms. Richelson stated there was a three-year learning curve, but I
never received any formal      training.
        I did not have a mid-year review. Ms. Richelson did not complete my
mid-year review until   mid December, but she never met with me to discuss
it.
        If Ms. Richelson felt I wasn't meeting objectives (which I never
got), she has an obligation to       provide me an action plan on how she

                                    2

and I were going to work together to reach those          objectives.
This never happened.

I worked an estimated 800 hours of overtime for Ms. Richelson. This
was done on personal     time (nights, weekends and holidays.) I was never
compensated for these hours, nor was I    granted time off.

I inherited a group that in Ms. Richelson's own words, "was in dire
shape." And transformed the   group.

My clients, the BPC and Compensation Design, have commended the
tremendous       improvements I have made with the team. Ms. Richelson did
not seek input from my clients,    which is a tangible way of measuring my
performance.

I was nominated for the Leaders in Excellence award, while working
for Ms. Richelson.


When I originally raised this issue, you asked Lisa Damask from HR to
address my concerns. My conversation with Ms. Damask was non-productive.
Her demeanor was standoffish; to the point where she stated, "none of
the examples you provided of inaccurate documentation, dealt with
performance." There is no doubt, that every example I provided, clearly
dealt with my performance. The end result of our conversation was that
Ms. Damask would contact me at the conclusion of the investigation and
we would revisit the issue. I still have not bee contacted by Ms.
Damask.

Two demotions:

After being assaulted by Ms. Richelson, I was contacted via
conference call by VP Laura Cardinale, Lisa Damask and Carolyn Driscoll
from HR. I was told they planned to move me to another position within
Ms. Cardinale's organization. Lisa Damask informed me that I, ".  "?will
maintain my current 2nd level status." Therefore, I agreed to the move.
At the time, I was under the career band 2M. My new position turned out
to be what is classified as a 2L, which was a demotion. This position is
a demotion, because a 2L often times reports to a 2M. If the positions
were equal, one would not be able to report to the other. Based on the
past indiscretions of Ms. Cardinale and that of the HR department, I
realized that I was placing my livelihood in jeopardy by staying in VP
Cardinale's organization and therefore, I had to take a further demotion
in order to leave the group. If you would like clarification on these
indiscretions, please let me know.


As a resolution, I am asking for the following:

My year-end 2001 evaluation be destroyed and a new accurate
evaluation composed.

My raise and VIP reflect this new evaluation.

A promotion back to my 2M job title outside the Finance organization.


If you are unable to resolve these issues, please let me know whom I should
speak to, in order to have them addressed. If this must be handled through
the HR department, please do not ask them to contact me; I will pursue the
issue myself. I am no longer going to deal with Ms. Damask or Ms. Driscoll
on this issue.


Finally, I was informed that Ms. Richelson's position is now vacant
and Linda Digiglio is a leading candidate for the job. During the
investigation, I was informed that Ms. Digiglio met with Ms. Digiglio and
stated, "I'll take care of you on your evaluation, if you take care of me
during this investigation." I did inform Paul McGovern at the time. I do
not know if there is any truth to this. I do not know what she received for

3

VER0608